liTHIBODEAUX, Judge.
Terry Hayes Logging and its insurer, American Interstate Insurance Company (AIIC), instituted an action to terminate the workers’ compensation benefits-of its injured employee, Larry Baxley. Baxley was accused of violating two anti-fraud provisions of the state’s workers’ compensation statutes, La.R.S. 23:1208 and 23:1208.1, by failing to answer truthfully questions regarding his medical history. The workers’ compensation judge found that Baxley had not violated either 12provision and, therefore, did not forfeit compensation benefits. The judge also awarded a $2,000.00 penalty and $5,000.00 in attorney fees to Baxley in response to his *554 reconventional demand, for the arbitrary and capricious denial of his request for a change in treating physician.
We find that Baxley did not forfeit compensation benefits pursuant to La.R.S. 28:1208.1 because the preemployment medical history questionnaire failed to comply with statutory requirements, and he did not forfeit benefits pursuant to La.R.S. 28:1208 because he did not willfully make false statements to his doctors or AIIC’s claims adjuster for the purpose of obtaining benefits. Further, we find that the denial of a change in physician was arbitrary and capricious and find no merit to Hayes’s and AIIC’s contention that the judge failed to act as a neutral and detached fact finder. Accordingly, we affirm.
I.

ISSUES

We must determine:
1. whether the preemployment medical questionnaire failed to comply with the statutory requirements of La.R.S. 23:1208.1;
2. whether Baxley’s statements regarding his prior medical history were willfully made for the purpose of obtaining workers’ compensation benefits, thus justifying a forfeiture of benefits pursuant to La.R.S. 23:1208;
3. whether the workers’ compensation judge acted with bias and prejudice during the proceedings, thus depriving the appellants of a neutral and detached decision maker; and,
4. whether Hayes and AIIC were arbitrary and capricious in refusing a referral to a second orthopaedist for purposes of Baxley pursuing back surgery, when his treating orthopaedist was semi-retired and unable to render this treatment if needed.
JHL

FACTS

Larry Baxley is a fifty-one year old laborer with a sixth-grade education. He is literate to the extent that he is able to sign his name and has learned to recognize and provide basic information on forms such as requests for an address, telephone number, etc. He has performed contract work in the timber industry for years.
Baxley was hired to perform log cutting work for Terry Hayes Logging on November 3, 1994. Baxley’s employment application was grossly incomplete, containing only his social security number, name, address, grammar school, and the name of a former employer. A two-page, preemployment medical history questionnaire was also completed by Baxley, on which he checked “no” in response to all injuries or prior illnesses listed. Baxley testified that he could not read most of what was listed but always answered “no” in response to these questions, believing them to be unimportant. The second page of the questionnaire contained a statutorily required warning printed in type larger than ten point and in all capital letters, regarding the risk of forfeiture of benefits for untruthful answers. The warning appears darker than the questions listed above it; however, the form is of such poor copy quality that the print above the warning is extremely faint, and the warning only appears to be of a fairly normal-faced print quality. The facts are in dispute as to whether Baxley completed these forms in the presence of Mrs. Hayes at her home on the evening of September 2, 1994, the night before work began, or whether he completed the forms on September 3, 1994 at the worksite along with other members of his crew. However, it is not disputed that he completed the forms without any 14assistance and was never advised about the warning, nor asked if he could read or understand what was being asked.
On November 8, 1994, while trimming limbs off of a fallen tree, Baxley fell and injured his lower back. He was subsequently diagnosed by orthopaedic surgeon, Dr. John Weiss, with a Grade I spondylolisthesis at L5, which is a slip of the fifth lumbar vertebra on the sacrum, and with Pars defects bilaterally. Dr. Weiss treated Baxley conservatively with the use of a back support belt and physical therapy, but Baxley has been only able to achieve temporary pain *555 relief with the continued use of pain medication.
Consequently, in February of 1995, Dr. Weiss recommended a lumbosacral fusion for the spondylolisthesis and instability. Since Dr. Weiss is semi-retired and no longer performs surgery or hospital care, he recommended a referral to orthopaedic surgeon, Dr. Tom Whitecloud, of Tulane Medical Center in New Orleans, and subsequently to Dr. Riceiardi, Dr. Whitecloud’s associate who travels to Baxley’s area to perform examinations and surgeries. AIIC denied the referrals after reviewing the second opinion of orthopaedist, Dr. John Patton. Dr. Patton conducted a surgical consultation with Baxley once in April of 1995 after reviewing the medical records of Baxley’s treatment with Dr. Weiss, and concluded that Baxley was not “particularly seriously injured” such that a fusion would be necessary. He believed that physical therapy, weight loss, work hardening, and the wearing of a lumbosacral support belt would improve Baxley’s condition. Claims adjuster Richard Pope explained that the referral to Dr. Patton was allowed solely for the purpose of the surgical evaluation, but the referrals to other ortho-paedists were denied because Baxley had exercised his only choice of physician by choosing Dr. Weiss.
_JsAt some point in 1995, Pope learned from Baxley’s medical records from Rapides General Hospital that he had been diagnosed with a Pars defect with a slip or spondylolis-thesis on April 9, 1992, approximately two years prior to his current work-related injury. Baxley had previously denied any back pain or injury or treatment for the same to Dr. Weiss and Dr. Patton. In addition, during an interview conducted by Pope on November 30, 1994, Baxley gave only this information in regards to the 1992 injury, in the following exchange:
P: Have you ever been injured on the job before?
B: The only time I’ve been injured on the job was with Murray and I didn’t call that no injury. I went back to work.
P: Within 2 or 3 days?
B: That’s right.
P: Okay,- was that basically a similar type injury?
B: No, not real. It was just ...
Unk: Pulled muscle.
B: Pulled muscle I guess.
Further, in response to questions on his preemployment medical history questionnaire, Pope discovered that Baxley denied ever having any of the medical problems or conditions listed on the form, which included back pain or injury, and that he also cheeked “Excellent” for present health condition. Baxley also failed to note, in response to specific questions addressing these issues, that he had knee surgery in 1974 or that he had previously injured his right foot and ankle in 1982, such that he was off of work for eighteen months and received workers’ compensation benefits totaling $13,542.00 and medical expenses of $4,946.21, in addition to a lump sum compromise settlement from the workers’ compensation insurer in the amount of $15,000.00, in exchange for a discharge of liability.
On October 24, 1995, AIIC filed a petition seeking to terminate the workers’ compensation benefits that were being paid to Baxley. He was accused of 16violating La.R.S. 23:1208 for willfully making false statements or representations for the purpose of obtaining workers’ compensation benefits, and also charged with violating La.R.S. 23:1208.1 for failing to truthfully answer his employer’s inquiries regarding his prior injuries, disabilities or other medical conditions. Baxley answered and filed a disputed claim for compensation seeking payment of unpaid medical services and penalties and attorney fees for the refusal to approve the referrals requested by Baxley’s treating orthopaedist, Dr. Weiss.
The workers’ compensation judge found that there had been no violation of La.R.S. 23:1208.1 because the preemployment medical questionnaire failed to comply with statutory requirements. Also, the. judge found that Baxley did not willfully make false statements for the purpose of obtaining workers’ compensation benefits and, therefore, had not violated La.R.S. 23:1208. The denial of the referral to Dr. Whitecloud or his associate, Dr. Riceiardi, w;as found to be arbitrary *556 and capricious because Dr. Weiss’s semi-retired status made it impossible for him to provide the surgery that may have been necessary for Baxley. Thus, $2,000.00 in penalties and $5,000.00 in attorney fees were awarded to Baxley. The issue of surgery was deferred until a more recent examination of Baxley could be performed. Hayes and AIIC suspensively appealed.
III.
LAW AND DISCUSSION La.R.S. 23:1208.1
Section 1208.1 of the Revised Statutes provides:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee’s forfeiture of benefits under this Chapter, provided said failure to answer |7directly relates to the medical condition for which a claim for benefits is made or affects the employer’s ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer may result in his forfeiture of worker’s compensation benefits under R.S. 23:1208.1. Such notice shall be prominently ■ displayed in bold faced block lettering of no less than ten point type.
(Emphasis added).
The forfeiture of workers compensation benefits contemplated by LSA-R.S. 23:1208.1 is expressly conditioned upon the presence of three factors: an untruthful statement; a direct relationship between the answer elicited and the claim for benefits or ability to receive reimbursement from the second injury form [sic]; and compliance with the notice requirements of the statute. Want of any of the three factors is fatal to the employer’s successful avoidance of workers compensation liability on grounds of past artifice.
Williams v. Holly Hill Nursing Home, 93-557, p. 3 (La.App. 3 Cir.); 640 So.2d 383, 385, writ denied, 94-1134 (La.7/1/94); 641 So.2d 208 (emphasis in original).
The workers’ compensation judge found that although Baxley had failed to reveal prior medical conditions and workers’ compensation injuries on the questionnaire, it did not comply with the statutory warning requirement. It contained a warning regarding the possible penalty for failing to answer truthfully, as required by the statute; however, the warning was not in bold print. She stated that although it appeared to be slightly darker than the other print on the page, it ■ was not sufficient to meet the requirements of 23:1208.1. She further stated that it was doubtful that Baxley had even read it, since he and another worker basically testified that they always just answer “no” to all of the medical problems and “excellent” for physical health.
Hayes and AIIC contend that the workers’ compensation judge committed reversible error in finding that the preemployment medical history [ 8questionnaire failed to comply with La.R.S. 23:1208.1. They do not dispute the fact that the page containing the warning was lighter than the other pages of the application. However, they argue that when viewed with the other pages of the application, it is apparent that the capitalized, bold faced print of the warning was considerably darker than the information preceding the warning. ■ This is significant, they assert, because Baxley did not appear to have any difficulty in responding to the inquiries in the much lighter print. They argue that although the page containing the warning is not a high quality copy, it served the purpose of putting Baxley on notice that any misrepresentation could potentially lead to a forfeiture of benefits. Further, it is notable, in their opinion, that Baxley’s signature appears below the warning.
The workers’ compensation judge was correct in recognizing that untruthful answers alone do not result in the. forfeiture of benefits. See Wise v. J.E. Merit Constructors, 97-0684 (La. 1/21/98); 707 So.2d 1214. The untruthful statements must be prejudi *557 cial to the employer and the employer must also prove that it provided the employee with statutory notice, which is the issue in this case.
The findings of the workers’ compensation judge will not be disturbed upon a finding that they are reasonably supported by the record and are not manifestly erroneous or cléarly wrong. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. Our review of the record confirms the position of the workers’ compensation judge. The print on the entire page containing the warning is' so faint and of such poor quality that it is virtually unreadable. The warning located at the bottom of the page is slightly darker than the print above it and is also printed in capital letters and in a typeface that is larger than ten point; however, we cannot disturb the workers’ compensation judge’s finding that the warning is not bold-faced as required by the statute. Based upon the appearance of | ¡¡the document, we find it reasonable to conclude that the type is not the prominent, bold-faced image contemplated by the legislature upon enacting this statute. As we stated in Alexander v. Conagra Broiler Co., 93-1671, p. 4-5 (La.App. 3 Cir. 7/13/94); 641 So.2d 621, 624:
In requiring that a warning appear on a written form soliciting information about an employee’s previous medical condition, the legislature obviously recognized the effect that their legislation could have on an employee who failed to report a previous medical condition: the complete loss of the employee’s only legal remedy for a work related injury.... Aware of the serious ramifications of such a clause, the legislature adopted a law that not only required a warning on a written form, but also required that “[s]uch notice shall be prominently displayed in bold faced block lettering of no less than ten point type.” La. R.S. 23:1208.1.
Further:
Consistent with “the tenet that the worker’s compensation laws are to be liberally construed,” Peveto v. WHC Contractors, et al., 93-C-1402 (La.1/14/94), at 3, 630 So.2d 689, 691, the provision is strictly construed against the employer, who is presumed to be in a better position to prevent workplace accidents through its hiring and firing decisions than is the worker, who seldom has the luxury of opting out of the workplace.
Pickett v. Stine Lumber Co., 93-1534, p. 4 (La.App. 3 Cir. 6/1/94); 640 So.2d 769, 771 (emphasis, added). Moreover, we find that neither Hayes nor AIIC proved that Baxley could read and understand the forms he was asked: to complete. It is, therefore, also reasonable to infer that he completed these forms without being aware of the potential forfeiture of benefits he could face upon submitting inaccurate information. Accordingly, the workers’ compensation judge’s finding will not be disturbed.
La.R.S. 23:1208
La R.S. 23:1208 is a relatively lengthy anti-fraud forfeiture provision that employers may assert to defend against paying claims in situations in which a | ^claimant makes a false statement or representation, in relation to a pending claim, for the purpose of obtaining or defeating any workers’ compensation benefit payment. Wise, 707 So.2d 1214. In addition to facing criminal penalties, a claimant will forfeit his benefits under La.R.S. 23:1208 upon a finding that “(1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.” Resweber v. Haroil Const. Co., 94-2708, p. 7 (La. 9/5/95); 660 So.2d 7, 12; See La.R.S. 23:1208.
The workers’ compensation judge conceded the fact that Baxley failed to disclose his prior back pain and treatment to Pope and the doctors who evaluated him, but the judge failed to find any intent on Bax-ley’s part to deceive or fraudulently misrepresent his circumstances in order to obtain workers’ compensation benefits. Reasonable credibility determinations and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La. 1989). Accordingly, the workers’ compensation judge’s findings will stand.
Our review of the record also clearly reveals that Baxley denied the existence of past *558 injuries to his doctors and to AIIC’s insurance adjuster. However, Baxley informed both parties of a prior back strain which Dr. Patton, the insurer’s chosen medical examiner, agreed could have been the totality of his understanding regarding the 1992 diagnosis of spondylolisthesis. He said that this was especially likely since Baxley appears to have returned to work a few days after the reported injury. Neither the doctors nor the workers’ compensation judge viewed Baxley as being evasive or purposely untruthful. Moreover, they all acknowledged his low educational level, diminished ability to comprehend certain matters, and lack of sophistication regarding his prior medical conditions. The record also shows that Baxley was taking pain medication and continuing to suffer from the pain associated Inwith his back condition, while being questioned regarding distant injuries or matters that were no longer problematic to him because they had long since ceased being a hindrance to his ability to perform the heavy duty work required of a logger. He and his wife explained that these factors further hindered his already problematic memory and contributed to his failure to give completely accurate information.
Additionally, it was never established that Baxley made the false statements for the purpose of obtaining workers’ compensation benefits. Sumner v. Lake Charles Marine, 96-280 (La.App. 3 Cir.); 676 So.2d 653, writ denied, 96-1772 (La.10/11/96); 680 So.2d 645, presented a similar factual scenario in which we found that a workers’ compensation judge had committed error in finding that the injured employee had willfully made false statements for the purpose of obtaining benefits. The injured employee was deposed two years after his accident occurred and, after previously giving correct information, gave erroneous information about the accident and the existence of a prior back injury. We found that it had not been established that this employee, who later corrected his deposition testimony and admitted to having a foggy memory about the incidents after so much time had passed, had made the false statements for the purpose of obtaining workers’ compensation benefits. In fact, this court found that his statements and failure to disclose did nothing to help him obtain benefits, as he had been fully recovered for a long period of time. We also took cognizance of the employee’s physical and mental condition at the time of his questioning; he was in the midst of suffering from chronic pain and depression.
Just as in Sumner, 676 So.2d 653, the positive credibility determinations, Baxley’s physical and mental condition at the time of his interview, and the failure of the employer to prove that the statements were made for the |i2purpose of obtaining benefits, compel us to find that Baxley did not willfully make false statements for the purpose of obtaining workers’ compensation benefits, so as to justify a forfeiture under La.R.S. 23:1208. As we stated in Sumner, 676 So.2d 653, 656:
Neither Resweber nor La.R.S. 23:1208 was intended to bar legitimate claimants who inadvertently give contradictory statements, after years of pain, depression, and the associated medication, from receiving the compensation benefits to which they are entitled. The statute and Resweber are intended to weed out those who prey on the compensation system through the use of lies and deceit.
This is not such a case.
Neutral and Detached Decision Maker
Hayes and AIIC contend that statements made by the workers’ compensation judge regarding her impression of Mrs. Hayes were reflective of the bias and prejudice the judge fostered during the hearing, thus tainting the entire proceeding. The appellants assert that the following remarks made by the judge in reference to Mrs. Hayes were improper:
The testimony of Mrs. Hayes who was co-owner was not very credible. She was pampas [sic], her testimony was self-serving, she made the comment, and I quote, they aren’t that formal, they try to make people feel at home, even though she lives in a mansion. I was offended by those remarks, I felt like she felt like she was better than everybody else. On the other hand, the testimony of both Mr. and Mrs. Baxley were [sic] also self-serving, though not offensive to this Court, they both *559 seemed to be pretty simple and down to earth people.
They assert that because the judge developed a dislike for Mrs. Hayes at the beginning of the hearing, the judge consequently found that the preemployment application that Mrs. Hayes allegedly provided to Baxley failed to comply with the statutory warning requirements of La.R.S. 23:1208.1. We find no merit to this contention.
Our supreme court stated in Butler v. Dept. of Public Safety and Corrections, 609 So.2d 790, 793 (La.1992):
| is An impartial decision maker is essential to an administrative adjudication that comports with due process, even if de novo review is available. To this end, the state Administrative Procedure Act attempts to prevent partiality or bias in adjudicative settings by prohibiting ex parte consultations and requiring recusal of subordinate deciding officers or agency members from proceedings in which they cannot accord a fair and impartial hearing or consideration. ...
The U.S. Supreme Court has stated, and this court concurs, that a party challenging the constitutionality of an administrative adjudication on the grounds of bias or prejudice of the decisionmaker must overcome the strong presumption of honesty and integrity in those serving as adjudicators.
(Citations omitted). The Court identified five possible types of bias that may call a decisionmaker’s impartiality into question:
(1) A prejudgment or point of view about a question of law or policy ... (2) a prejudgment about legislative facts that help answer a question of law or policy ... (3) Advance knowledge of adjudicative facts that are in issue ... (4) A personal bias or personal prejudice, that is, an attitude towards a person, as distinguished from an attitude about an issue ... (5) One who stands to gain or lose by a decision in either way ... [or] a conflict of interest.
Id. at 794-795 (citing In Matter of Rollins Environ. Servs., Inc., 481 So.2d 113, 119-120 (La.1985)).
Although Hayes and AIIC have accused the workers’ compensation judge of expressing a personal bias or prejudice towards Mrs. Hayes, they have failed to submit any evidence which demonstrates alleged prejudice, bias, or animosity, or how this alleged attitude tainted the proceedings. We find nothing in the record to support this allegation, and cannot conclude that the comments made by the workers’ compensation judge, in reference to her assessment of Mrs. Hayes’s testimony and demeanor, are sufficient to conclude that she failed to act as a neutral and detached decision maker throughout the proceeding and acted with bias and prejudice in her determination of whether the preemployment medical history questionnaire complied 1 14with statutory requirements. The comments relied upon by Hayes and AIIC, with nothing further to support their allegation, simply do not overcome the “strong presumption of honesty and integrity” that is placed in adjudicators.
Further, we think it noteworthy that the appellants failed to file a motion to have the workers’ compensation judge recused once they came to believe the judge could not preside with impartiality. See La.Code Civ.P. art. 151.
Arbitrary and Capricious Denial of a Medical Referral
The workers’ compensation judge found that the refusal to allqw a change in orthopaedists was arbitrary and capricious. See La.R.S. 23:1201; 23:1201.2. The insurer knew that Dr. Weiss was semi-retired and did not perform surgeries; therefore, it should have approved the referrals recommended by Dr. Weiss.
The factual finding of the workers’ compensation judge regarding whether the employer or insurer acted in an arbitrary and capricious manner, should not be disturbed absent manifest error. Thibodeaux v. Woman’s Hosp. of Acadiana, 578 So.2d 213 (La.App. 3 Cir.1991). It is not error for the workers’ compensation judge to accord greater weight to the testimony of the treating physician rather than to a physician hired solely to evaluate' the injured employee. Sharbono v. H & S Const. Co., 478 So.2d 779 (La.App. 3 Cir.1985). The workers’ compensation judge in this cáse obviously accorded greater weight to the opinion of Dr. Weiss, the treating physician, regarding' his belief in Baxley’s need for surgery, rather than to the *560 opinion of Dr. Patton, who only performed one evaluation of Baxley and reached a different conclusion. Although penalties and attorney fees are not available when defendants have a legitimate basis for denying or terminating compensation benefits, the mere opinion of a non-treating physician regarding the employee’s condition, 115does not justify a discontinuance of payment of benefits where the employer and insurer are aware of other facts which point to the injured employee’s disability. Id. Consequently, we find the penalty award of $2,000.00 and $5,000.00 in attorney fees for work at the trial level reasonable in view of the degree of skill and ability exercised, the results obtained, and the amount of time devoted to the case. See Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981). In addition, we will award $3,000.00 in attorney fees for work done on this appeal.
IV.

CONCLUSION

Accordingly, the judgment of the Office of Workers’ Compensation is affirmed. An additional $3,000.00 in attorney fees is awarded to defendant-appellee, Larry Baxley, and all costs of this appeal are to be borne by plaintiffs-appellants, Terry Hayes Logging Contractors and American Interstate Insurance Company.
AFFIRMED.